

# IN THE
# TENTH COURT OF APPEALS

### No. 10-10-00200-CR

**LOGAN PENADELA,**

                                                                    **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                                    **Appellee**

From the 12th District Court
Walker County, Texas
Trial Court No. 24080

## MEMORANDUM OPINION

Pursuant to a plea bargain agreement, Logan PenaDeLa pleaded guilty to the offense of bribery. TEX. PENAL CODE ANN. 36.02 (Vernon 2003). The trial court deferred the adjudication of guilt and placed PenaDeLa on community supervision for three years. We affirm.

### Background Facts

PenaDeLa was a prison guard for the Texas Department of Criminal Justice. PenaDeLa and another prison guard, Zachary Kyle Hollis, were suspected of smuggling

contraband into the prison.[1]  Assistant Warden Lonnie Johnson testified at the hearing on the motion to suppress that at approximately 10:00 p.m., he received a call at his house about the alleged smuggling of contraband.  Warden Johnson went to the unit and spoke with the supervisor and later spoke to PenaDeLa as part of his administrative investigation.  Johnson first conducted a verbal interview with PenaDeLa, and then Johnson asked PenaDeLa to write out his statement.  Johnson testified that he conducted only an administrative investigation concerning PenaDeLa's employment.  Johnson did not give any warnings before PenaDeLa gave his statement.

Johnson testified that an administrator will call the Office of the Inspector General (OIG) if it appears that there may be cause for a criminal investigation.  Johnson called OIG and informed PenaDeLa that OIG would need to talk to him.

Investigator Brent Dorman with the OIG testified at the hearing that he received a call at approximately 11:00 p.m. to go to the unit.  Upon arriving at the unit, Dorman spoke with Johnson about the alleged offense.  Dorman read PenaDeLa his *Miranda*[2] warnings before taking a statement from him.  In addition to the traditional *Miranda* warnings, Dorman also informed PenaDeLa of an additional right applicable to TDCJ employees.  That warning stated that PenaDeLa is a suspect in a criminal case and that he would not be subject to employment discipline if he refused to waive his *Miranda* rights.  PenaDeLa signed the statement acknowledging that he received the warnings and also acknowledging that he was not in custody. Dorman stated that PenaDeLa

---

[1] Hollis was also charged in connection with the offense, and he also filed a motion to suppress his statement.  The trial court held a joint hearing on the motions.

[2] *Miranda v Arizona*, 384 U.S. 436 (1966).

understood that he did not have to talk to Dorman. PenaDeLa was not in custody and was free to terminate the interview. PenaDeLa gave a written statement to Dorman and later was escorted off the unit.

PenaDeLa testified that he gave both an oral and written statement to Warden Johnson. PenaDeLa stated that he felt he would be arrested if he did not give a statement. PenaDeLa later gave a written statement to Investigator Dorman, and he acknowledged that Dorman read him his rights. However, PenaDeLa testified that he felt he was under arrest and not free to leave. PenaDeLa further testified that he did not understand his additional right as a TDCJ employee that he could exercise his *Miranda* rights without being disciplined by TDCJ. PenaDeLa testified on cross-examination that he understood he was not in custody or under arrest. PenaDeLa stated that he never asked to leave.

In his sole issue on appeal, PenaDeLa complains that the trial court erred in denying his motion to suppress his confession.

## Standard of Review

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007). Appellate courts must give great deference to the trial court's findings of historical facts as long as the record supports the findings. *Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997). Because the trial court is the exclusive factfinder, the appellate court reviews evidence adduced at the suppression hearing in the light most favorable to the trial court's ruling. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). We also give deference to

the trial court's rulings on mixed questions of law and fact when those rulings turn on an evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 87. Where such rulings do not turn on an evaluation of credibility and demeanor, we review the trial court's actions de novo. *Id*.

### *Garrity*

PenaDeLa first complains that his confession is inadmissible under *Garrity v. State of New Jersey*, 385 U.S. 493 (1967). In *Garrity*, police officers under investigation for misconduct were warned before being questioned that they had the right to refuse to answer questions, but that they would be subject to removal from office if they refused to answer. *Garrity*, 385 U.S. at 494. The Court held that the 14th Amendment prohibits the use of statements obtained under threat of removal from office in subsequent criminal proceedings. *Garrity*, 385 U.S. at 500.

PenaDeLa argues that his statement to Warden Johnson was obtained under threat of termination, and therefore, that statement and the subsequent statement made to Investigator Dorman are both inadmissible. The TDCJ Rules of Conduct require employees to cooperate with official investigations. PenaDeLa had a "general idea" of the rules, but did not remember the rules in detail. PenaDeLa testified that he believed he would be arrested if he did not give a statement to Warden Johnson and cooperate with the investigation. PenaDeLa did not testify that he was told he would be terminated if he refused to give a statement or that he believed he would be terminated for refusing to give a statement. Investigator Dorman specifically informed PenaDeLa

that he would not be disciplined for exercising his *Miranda* rights. The record does not support PenaDeLa's argument that his statements are inadmissible under *Garrity*.

## Custody

PenaDeLa next argues that his statements were given involuntarily because he was in custody at the time he gave the statements. In determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but the ultimate inquiry is simply whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. *Estrada v. State*, 313 S.W.3d 274, 294 (Tex.Crim.App.2010), *cert. den'd,* 2011 U.S. Lexis 441, 79 U.S.L.W. 3399 (U.S. January 10, 2011); *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex.Crim.App.1996). An officer's views concerning the nature of an interrogation, or beliefs concerning the potential culpability of the individual being questioned, may be one among many factors that bear upon the assessment whether that individual was in custody, but only if the officer's views or beliefs were somehow manifested to the individual under interrogation and would have affected how a reasonable person in that position would perceive his or her freedom to leave. *Estrada*, 313 S.W.3d at 294.

PenaDeLa was questioned in the warden's office complex inside of the prison unit. Although there were guards in the office complex, the guard was not permitted to restrain or detain PenaDeLa. Obviously, for security purposes the doors leaving the prison are locked and a person must have employee identification to leave the premises or other authorization.

Warden Johnson testified that PenaDeLa was free to leave at any time. Johnson explained, "There's no one there except the inmates in white that are not free to leave." If PenaDeLa would have indicated to Johnson that he did not wish to give a statement, Johnson would have let him leave the premises at that time. During the course of the investigation, PenaDeLa surrendered his employee identification, and therefore, would have to be escorted out of the building. Johnson testified that if PenaDeLa would have requested to leave, a uniformed shift supervisor or Johnson would have escorted him from the building.

Investigator Dorman read PenaDeLa the *Miranda* warnings before taking a statement informing PenaDeLa of his right to terminate the interview. PenaDeLa signed the statement indicating that he was not in custody.

Although the security measures inside of the prison unit created a unique situation for leaving the building, PenaDeLa was free to terminate the interview and leave the premises at any time. We find that a reasonable person would not believe his freedom of movement was restrained to the degree associated with a formal arrest. The trial court did not abuse its discretion in denying PenaDeLa's motion to suppress. We overrule PenaDeLa's sole issue on appeal.

We affirm the trial court's judgment.


AL SCOGGINS
Justice

Before Chief Justice Gray,
    Justice Davis, and

Justice Scoggins

Affirmed

Opinion delivered and filed March 2, 2011

Do not publish

[CR25]